[Tagged]



ORDERED in the Southern District of Florida on June 17, 2016.

Erik P. Kimball, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                          CASE NO.:14-20731-EPK
                                                                CHAPTER 7
MARTIN A. TABOR and ABBY TABOR,

    Debtors.
_____/
DEBORAH C. MENOTTE, Chapter 7 Trustee,

    Plaintiff,

v.                                                              ADV. PROC. NO.:15-01577-EPK

WILLIAM GASSAN, AS TRUSTEE OF THE
PORT MAYACA FAMILY TRUST, TRACY
SHELOWITZ, SCOTT TABOR, BRETT
TABOR, and SHELLEY KIRSCHENBAUM,

    Defendants.
_____/

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

In this adversary proceeding, Deborah Menotte (the "Plaintiff"), as Chapter 7 Trustee for the estate of Martin Tabor and Abby Tabor (the "Debtors"), sues William Gassan, as

1

Trustee of the Port Mayaca Family Trust (the "Defendant"), to avoid an alleged fraudulent transfer and obtain a monetary judgment.  In his *Motion to Dismiss Plaintiff's Amended Complaint to Avoid and Recover Fraudulent Transfer and for Related Relief* [ECF No. 65] (the "Motion"), the Defendant argues that the Plaintiff's amended complaint [ECF No. 59] must be dismissed for two reasons:  1) the Plaintiff lacks standing to pursue her claim, and 2) the Plaintiff fails to sufficiently identify what she seeks to recover.

Because this is a motion to dismiss, the Court determines, based on "judicial experience and common sense," whether the well-plead facts in the amended complaint present a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court accepts as true all factual allegations in the amended complaint, *id.* at 678, and in most circumstances considers only the amended complaint and documents attached to the amended complaint. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).

The amended complaint contains a single count against the Defendant:  a claim to set aside a fraudulent transfer and obtain a monetary judgment, pursuant to the Florida Uniform Fraudulent Transfer Act (Fla. Stat. §§ 726.105(1)(a), 726.108, and 726.109), using the powers given to trustees in bankruptcy under 11 U.S.C. §§ 544(b) and 550(a).

The amended complaint alleges the following facts.  Debtor Martin Tabor owned interests in real estate development companies.  Mercantil Commercebank, Banco Popular, and Bank Atlantic made loans to various entities controlled by Martin Tabor, and Martin Tabor personally guaranteed bank loans aggregating tens of millions of dollars.  By December, 2009, Martin Tabor was obligated on over $40 million in debt under various guaranties he executed in favor of Mercantil Commercebank, Banco Popular, and Bank Atlantic.

2

Previously, on April 7, 2005, Martin Tabor settled the Port Mayaca Family Trust (the "Trust"). The Defendant was designated the trustee of the Trust and Tracy Shelowitz, Scott Tabor, Brett Tabor, and Shelley Kirschenbaum were designated the Trust's beneficiaries.

In January 2006, Martin Tabor loaned his son, Scott, and Scott's then wife, Maria Yael Tabor, the sum of $1,325,000 in order to permit Scott and Maria to purchase a home (the "Scott Home"). As collateral, Martin Tabor received a mortgage (the "Scott Mortgage") on the Scott Home. It is believed that Martin Tabor also received a promissory note (the "Scott Note"), although that document has not been found.

The maturity date of the Scott Note and Scott Mortgage was January 31, 2009. Martin Tabor did not collect interest under the documents or enforce the terms of the documents at maturity. Instead, on December 22, 2009, Martin Tabor executed an Assignment of Mortgage and Note transferring all of his right, title, and interest in the Scott Note and Scott Mortgage to the Defendant, as trustee of the Trust. The Assignment of Mortgage and Note was recorded on December 23, 2009 (the "Transfer"). At the time of the Transfer, Martin Tabor was not indebted to the Trust. By the time of the Transfer, Martin Tabor had received default letters from at least Mercantil Commercebank and Bank Atlantic, and both Debtors had been sued by Mercantil Commercebank under their guaranties. Martin Tabor's March, 2010 financial statement provided to Banco Popular described his failing financial status.

The Plaintiff alleges that Martin Tabor was concerned that he owed tens of millions of dollars under his guaranties and that the banks to whom he was indebted could obtain judgments against him and execute upon the Scott Note and Scott Mortgage, foreclose on the Scott Home, and then seek deficiencies against Scott and Maria. To protect his son and daughter-in-law and to prevent the banks and his other creditors from reaching this asset, Martin Tabor undertook the Transfer.

3

Although the Scott Note and Scott Mortgage were substantially in arrears after the Transfer, no action was taken to foreclose or compel payment.  In early January, 2012, the Defendant, as trustee of the Trust, agreed to accept the net amount of $844,052.75 in satisfaction of the Scott Mortgage as part of a "short sale" of the Scott Home.  Neither Scott nor Maria was held liable for any deficiency.  The Defendant, as trustee, distributed the net proceeds to the beneficiaries of the Trust.

The Debtors filed their joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on May 9, 2014.

The Plaintiff "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of [the Bankruptcy Code]." 11 U.S.C. § 544(b)(1).

The Plaintiff seeks to avoid the Transfer (the assignment of the Scott Note and Scott Mortgage to the Defendant, as trustee of the Trust).  The applicable law the Plaintiff seeks to use to avoid the Transfer is Fla. Stat. § 726.105(1)(a), which provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  As of the petition date, the Plaintiff steps into the shoes of a qualifying unsecured creditor, that is, one who could avoid the Transfer under Florida law.  Absent a qualifying (sometimes called a "triggering") creditor, the Plaintiff may not use § 544(b) to avoid the Transfer.  The Plaintiff's claims are subject to any applicable defense that could be raised against the triggering creditor.

The Defendant argues that the Plaintiff failed to identify a triggering creditor.  In the

4

amended complaint, the Plaintiff identifies three potential triggering creditors: Mercantil Commercebank, Bank Atlantic, and Banco Popular.

The Defendant first argues that while Banco Popular was scheduled in this chapter 7 case, Banco Popular failed to file a proof of claim, does not hold an allowed claim, and thus cannot be a triggering creditor. The Court disagrees. Section 544(b)(1) requires the existence of "a creditor holding an unsecured claim that is allowable. . . ." The relevant time to determine whether a creditor holds an allowable unsecured claim is the petition date. Here, it is not disputed that Banco Popular, on the petition date, held an allowable unsecured claim. It does not matter that, after the filing of this case, Banco Popular did not file a proof of claim (which proof of claim, if filed and absent objection, would have resulted in an allowed claim). The Code does not require that the triggering creditor have a claim that is in fact allowed in the case, but only that the claim in question be an allowable claim as of the petition date.[1] The Defendant does not argue that, as of the petition date, Banco Popular did not hold a claim that could have been allowed in this case.

The Defendant next argues that because the Plaintiff objected to the filed claim of Mercantil Commercebank, on the ground that it was paid after the petition date, Mercantil Commercebank may not be a triggering creditor. Again, the Defendant does not dispute that Mercantil Commercebank had an allowable unsecured claim on the petition date. The Trustee's avoiding powers are established as of that moment. It does not matter that the claim in question was satisfied after this case was commenced.[2]

---

[1] Indeed, it would be absurd if the Code provided otherwise, as the existence of a chapter 7 trustee's avoidance power could then depend on whether an unsecured creditor finds it advantageous to file a proof of claim.

[2] Again, it would be absurd if the Code was drafted in the manner suggested by the Defendant, as then a fraudulent transfer defendant could avoid liability simply by paying off the triggering creditors' claims during the bankruptcy case.

The Defendant next argues that the Plaintiff may not stand in the shoes of Mercantil Commercebank, Banco Popular, or Bank Atlantic, because the claims of those banks were time-barred on the petition date.

The Trustee proceeds in this case under Fla. Stat. § 726.105(1)(a).  A cause of action with respect to a fraudulent transfer under this section is extinguished unless the action is brought "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant". Fla. Stat. § 726.110(1).

The Transfer at issue occurred on December 22, 2009.  The Debtors' joint petition for relief was filed on May 9, 2014, which was more than four years after the Transfer.  The only way the Plaintiff may sustain the present fraudulent transfer action is if the claim falls within the "savings clause"—that is, if it was brought "within 1 year after the transfer. . . was or could reasonably have been discovered by the claimant."  In the amended complaint, the Plaintiff alleges that it was not until the August 27, 2014 examination of Martin Tabor under Fed. R. Bankr. P. 2004 and his subsequent production of documents underlying the transactions that the Plaintiff and creditors could have reasonably discovered the underlying facts and fraudulent nature of the Transfer.

The Defendant argues that all three of the Plaintiff's alleged triggering creditors obtained actual as well as constructive notice of the Transfer more than one year prior to the petition date and so none of them could take advantage of the savings clause and the claim is time-barred.

The Defendant argues that the banks had actual notice of the Transfer more than one year prior to the petition date, in the form of annual personal financial statements that showed the Scott Note and Scott Mortgage as an asset in one year and absent from the list of

6

assets in a subsequent year. From this, the Defendant argues, the banks would necessarily have concluded that the Scott Note and Scott Mortgage were transferred in the interim, and so the banks were on actual notice of the Transfer.

To support this contention, the Defendant points to guaranties, attached to the proofs of claim filed by Bank Atlantic and Mercantil Commercebank, which are themselves attached to the Motion. The guaranties require the delivery of annual personal financial statements to the banks. In the context of a motion to dismiss, the Court may consider a document not attached to the complaint if: (1) the plaintiff refers to the document in the complaint; (2) the document is central to the plaintiff's claim; (3) the contents of the document are not in dispute; and (4) the document is attached to the defendant's motion to dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). In the amended complaint, the Plaintiff (1) refers to the guaranties, (2) states that the triggering creditors held allowable unsecured claims on the petition date as a result of such guaranties, a necessary component of this action; and (3) does not, in her response, dispute the contents of the guaranties. The Court may consider the guaranties attached to the Motion.

Yet the Defendant's argument still fails. First, the record does not include copies of the relevant annual personal financial statements. Second, even if the Court had those documents and they showed what the Defendant alleges, the listing of a financial asset on one annual personal financial statement and its absence on a subsequent report does not necessarily require the conclusion that the asset was transferred. It could have been collected or written off, for example. Applying simple logic, the Court would not be required to conclude that the banks obtained actual notice of the Transfer. Finally, and most importantly, while the Court may look to the guaranties in connection with the Motion, even if the record included the relevant financial statements they would not satisfy the test set out in 11th

7

Circuit precedent, *supra*, as they are not central to the Plaintiff's claim. The Court could not rely on the annual personal financial statements at the motion to dismiss stage.

The Defendant next argues that the alleged triggering creditors had constructive notice and could reasonably have discovered the Transfer because the Transfer was recorded on December 23, 2009 in the public records of Martin County, Florida. The Defendant argues that the public recording of a transfer, by itself, constitutes constructive notice such that a creditor could reasonably have discovered the transfer and, if a fraudulent transfer claim such as the one at issue here is not filed within 1 year of that recording, then the creditor is time-barred and may not pursue the fraudulent transfer claim.

The Defendant notes a split in case law among courts considering this issue in the context of the Uniform Fraudulent Transfer Act. This Court agrees with those courts ruling that recording, alone, does not as a matter of law establish that a creditor could reasonably discover a fraudulent transfer. *See, e.g.*, *MTLC Inv., Ltd. v. Jones (In re Hill),* No. 3:03-cv-1034-J-32, 2004 U.S. Dist. LEXIS 31985 (M.D. Fla. Nov. 4, 2004); *Desak v. Vanlandingham*, 98 So. 3d 710 (Fla. 1st DCA 2012). The Court does not agree with the Defendant that the facts of the cases cited here are materially different from the circumstances of this case. The determination of when a particular triggering creditor could reasonably have discovered a fraudulent transfer is a factual issue that may require consideration of various evidence in addition to the recorded Transfer. It is not appropriate for the Court to determine this issue at the motion to dismiss stage.

The Defendant also argues that the relevant date for purposes of the savings clause is the date the triggering creditor could have discovered the transfer itself, and not the date the fraudulent nature of the transfer could have been discovered. When considering the motion to dismiss the original complaint in this case, the Court adopted the reasoning of the

Supreme Court of Hawaii in *Schmidt v. HSC, Inc.,* 319 P.3d 416 (2014) (following majority view), which ruled that it is not simply the existence of the transfer that must be reasonably discoverable but the fact that the transfer was fraudulent.  However, since this Court's ruling on the first motion to dismiss, the Second District Court of Appeal examined "two issues of first impression" in Florida state courts, including "whether the one-year savings clause is triggered by a creditor's discovery of the transfer or, instead, by the creditor's discovery of the facts showing the transfer to have been fraudulent." *Nat'l Auto Serv. Ctrs. v. F/R 550, LLC,* No. 2D14-3632, 2016 Fla. App. LEXIS 4820 (Fla. 2d DCA March 30, 2016).  The Second District Court of Appeal held that "discovery of the transfer is the operative fact." *Id.*  As the only intermediate appellate court to rule on this issue of Florida law, and absent a decision by the Supreme Court of Florida, this is binding authority.  The relevant date is the date the Transfer itself was or could reasonably have been discovered.  It does not matter whether any creditor would have realized the Transfer was fraudulent.  In any case, this has no impact on the Court's determination here because, again, the Court's analysis requires review of facts in addition to the recording of the Transfer and so it is not appropriate to determine the issue in connection with a motion to dismiss.

Finally, the Defendant argues that the Plaintiff fails to sufficiently identify what she is seeking to recover.  The Defendant argues that it is apparent that the Plaintiff is not seeking to recover the thing transferred, meaning the Scott Note and Scott Mortgage, because the financial obligation they represent has been satisfied. In the amended complaint, the Plaintiff asserts that the Defendant was "the initial transferee and/or immediate or mediate transferee of this property or was the individual for whose benefit the transfers were made" and seeks a judgment against him "for the value of the transfers."  The Defendant argues that the Plaintiff fails to specifically identify "the transfers" and also fails to identify the

alleged value of the transfers or the benefit the Defendant allegedly received in respect of the transfers.

In the amended complaint, the Plaintiff requests that the Court "avoid the transfers to Defendant William Gassan, as Trustee of the Port Mayaca Family Trust as set forth in this Count and awarding damages in her favor in the amount of the fraudulent transfers, plus pre and post-judgment interest, costs and for such other and further relief as the Court deems just and proper." Earlier in the amended complaint, the Plaintiff alleges that "Debtor Martin Tabor transferred the Scott Note and Scott Mortgage to or for the benefit of Defendant William Gassan, as Trustee of the Port Mayaca Family Trust." Consistent with the statute, the Plaintiff seeks to avoid that Transfer but, rather than seek return of the Scott Note and the Scott Mortgage, seeks a monetary judgment for their value. Not only does the amended complaint clearly state that those financial obligations remained completely unpaid at the time of the Transfer, but the amended complaint states that the Defendant thereafter received partial payment and then apparently released the obligors of further liability. If the Plaintiff satisfies her burden of proof at trial, the monetary judgment would reflect the amount collectible on the Scott Note and Scott Mortgage as of and after the date of the Transfer, and would include at least the amount actually received by the Defendant on account of those instruments, plus appropriate interest and costs. The amended complaint is well plead in this regard.

Accordingly, it is ORDERED AND ADJUDGED that the Motion [ECF No. 65] is DENIED.

###

Copies Furnished To:
David L Gay, Esq.

*David L Gay, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service.*